**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Baltimore Division*

| | |
|---|---|
| CHELSEA RALEY | **Case No. 1:16-cv-01654** |
| *Plaintiff,* | **Complaint for Violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e and the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-606** |
| v. | |
| MARYLAND STATE POLICE | **Jury Trial Demanded** |
| *Defendant.* | **Date: December 27, 2016** |

**FIRST AMENDED CIVIL COMPLAINT FOR**
**MONETARY RELIEF AND DEMAND FOR JURY TRIAL**

Plaintiff Chelsea Raley files this Civil Complaint against the Maryland State Police for violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e ("Title VII"), and the Maryland Fair Employment Practices Act, Md. Code Ann., State Gov't § 20-606 ("MD FEPA").

**INTRODUCTION**

1.      Chelsea Raley is a homosexual female who has been employed by the Maryland State Police since 2008.

2.      Raley was transferred to the Cumberland Barrack in Allegany County in 2014.

3.      As the only female and only homosexual State Trooper in the Cumberland Barrack, Raley has been discriminated against, retaliated against, and made to work in a hostile work environment.

4.      Maryland State Police management has knowledge of Raley's treatment, and despite substantiating Raley's claims through an Office of Fair Practices investigation, has not

taken action to remedy the discrimination, retaliation, or hostile work environment Raley continues to experience.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action asserts claims that arise under the laws of the United States, specifically, 42 U.S.C. § 2000e, *et seq*.,

6.      Raley has exhausted the administrative remedies available to her under 42 U.S.C. § 2000e, *et seq*. The U.S. Equal Employment Opportunity Commission issued Raley a Dismissal and Notice of Rights on February 26, 2016. This Complaint and Demand for Jury Trial is timely filed within the ninety (90) day period allowed by 42 U.S.C. § 2000e-5(f)(1).

7.      This Court has supplemental jurisdiction over Raley's MD FEPA claims pursuant to 28 U.S.C. § 1367 as the facts that support Plaintiff's State law claims are the same as those alleged for her federal claims.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or substantially all of the unlawful employment practices alleged occurred within this judicial district.

## PARTIES

9.      Plaintiff Raley is a resident of Cumberland, Maryland.

10.      Raley is employed as a Trooper First Class with the Maryland State Police in its Field Operations Bureau and she is currently assigned to the Cumberland Barrack in Allegany County, Maryland.

11.      Defendant Maryland State Police is a department of the Maryland State Government, and is the statewide law enforcement agency for the State of Maryland.

12.     The Maryland State Police is comprised of: Department of State Police (commanded by the Colonel); Bureaus (commanded by a Lieutenant Colonel); Commands (commanded by a Major); Troops (commanded by a Captain); Divisions (commanded by a Captain or Civilian Director); Barracks (commanded by a Lieutenant); Sections (commanded by a Captain, Lieutenant, or Civilian Director); Units (commanded by a First Sergeant)

13.     All subdivisions of the Department of State Police fall under the Office of the Superintendent and are a part of one of three bureaus: Filed Operations Bureau; Criminal Investigation Bureau; or Support Services Bureau.

## FACTUAL ALLEGATIONS

### Raley's Employment History with the Maryland State Police

14.     Raley began her employment with the Maryland State Police in June 2008 as a civilian cadet. She entered the State Police Academy on February 1, 2010, and graduated from the Academy as a State Trooper on July 31, 2010.

15.     After three years of satisfactory service, Raley was promoted to Trooper First Class in February 2013.

16.     As a State Trooper, Raley was first assigned to the College Park Barrack in Prince George's County, Maryland, where she worked from July 31, 2010, through May 4, 2011.

17.     In May 2011, Raley was transferred to the Rockville Barrack in Montgomery County, Maryland, and worked there from May 5, 2011, through September 2012.

18.     In September 2012, Raley was selected for a specialized unit, the Commercial Vehicle Enforcement Division, in Frederick, Maryland, where she worked from September 2012 until April 2014.

19.    All of Raley's quarterly reviews from the time she joined the Maryland State Police in 2008 through her assignment to the Cumberland Barrack in April 2014 were positive.

20.    In April 2014, Raley was assigned to the Cumberland Barrack in Allegany County, Maryland, where she reported on April 22, 2014, and has been working ever since.

21.    At the Cumberland Barrack, Raley was assigned to Work Group 2, under the command of Corporal Theodore Bell, along with Trooper First Class Matthew Schoenadel, Trooper First Class Shawn Bennett, and Trooper First Class Samuel Sarver.

**Trooper First Class Bennett Begins Questioning Raley's Sexual Orientation**

22.    In or around the beginning of May 2014, before Raley was assigned a patrol vehicle, Raley was riding along with Bennett.

23.    During one particular ride along, Bennett was discussing a female acquaintance of his from Carroll County who is a homosexual.

24.    Bennett told Raley that Bennett had offered to be this woman's sperm donor.

25.    Bennet then offered to be a sperm donor for Raley and her girlfriend and roommate at the time.

26.    Raley did not respond to this comment, and felt that Bennett was eliciting information about Raley's personal life without directly asking Raley if she was a homosexual, or if she was dating her female roommate at the time.

27.    While Raley did not hide the fact that she was a homosexual from her colleagues at the Maryland State, she also did not openly speak to her co-workers about her sexual orientation or dating life.

28.     Nonetheless, Raley has posted pictures with her girlfriend with whom she lived at the time on Facebook, where Raley is friends with many of her colleagues, so her co-workers knew she was a homosexual.

29.     Bennett, in particular, knew Raley and her roommate were homosexuals and offered to be their sperm donor.

30.      Nonetheless, Bennett and Schoenadel asked Raley to go out for drinks with them, which she declined, leading to Bennett becoming hostile towards her.

**Raley's Supervisor and Colleagues Create a Sex-Based Hostile Work Environment**

31.     In or around the middle of May 2014, Bell, Bennett, Schoenadel, and Raley were in the duty officer's room of the Cumberland Barrack during their shift.

32.     When Schoenadel briefly exited the room, Bell took Schoenadel's cell phone, accessed Schoenadel's Facebook page, and posted a picture with approximately 20 dildos to Schoenadel's Facebook wall.

33.     While doing so, Bell was laughing and told Bennett and Raley that he was posting "something" to Schoenadel's Facebook wall.

34.     Bennett and Raley, being Facebook friends with Schoenadel, looked to see what Bell had posted and saw the picture with dildos.

35.     Raley is uncomfortable discussing sex related topics at work with colleagues, such as dildos—commonly associated with gay women—so she removed herself from the situation by walking to her car and driving away.

36.     In June 2014, Raley walked into the duty officer's room at the barrack and saw Bennett showing a picture of a woman in a bra to others in the room.

37.     Bennett acknowledged Raley's presence, turned his phone away, but continued to speak about the woman in the picture as his "meat of month" while the other men in the room laughed.

38.     Bennett often talks about women, specifically lesbians, in derogatory terms.

39.     The other troopers engage in similar behavior, as shown in Trooper First Class Timothy Brown's a March 11, 2015, Facebook post on Bell's wall of a picture of two half-naked women hugging. Bell also tagged Schoenadel in the picture's comment section asking, "What's your vote Matt?"

**Bell Targets Raley**

40.     In or around June 2014, Bell told Raley that Raley needed to stop "skipping out on calls" when Raley is the closest trooper to the call.

41.     Raley did not recall a time she had skipped a call, but Bell signaled a late shift call for which, given her proximity to the call, Raley should have been the first trooper to respond, but instead was the third.

42.     Once Raley disagreed and argued that her patrol car's GPS would place her at her house at that particular time, Bell conceded his reprisal, but again warned Raley about responding to calls.

43.     Bell also assigned Raley more work than he assigned to her male counterparts despite Raley's lack of experience working at a full service barrack before, which all of her male colleagues possessed.

44.     Other troopers were aware of this disparity in assignments, as signaled by Sergeant James Pritts in or around late June 2014, when he volunteered to handle the incident report for a call because he was aware of "how big of a case load Bell [gave Raley]."

6

45.     From May 2014 through October 2014, while Raley was under Bell's command, Raley handled thirty four (34) criminal investigation reports and sixteen (16) accident reports.

46.     In the same time period, Bennett handled twenty five (25) criminal investigation reports and seven (7) accident reports, Schoenadel handled nineteen (19) criminal investigation reports and thirteen (13) accident reports, and Sarver handled twenty two (22) criminal investigation reports and eleven (11) accident reports.

**Bennett Discusses Raley's Personal Life in the Office**

47.     In or around September 2014, while Raley was out on sick leave, Bennett observed Raley's friend and colleague, Master Trooper Henry Doll, was completing Raley's pay form (Form 31). Bennett inquired about how Raley was paying Doll for his services.

48.     Doll explained that he was doing a favor for a friend and colleague without "getting anything out of it"

49.     Bennett stated, "Oh yea, you don't have to worry about [Raley] paying you back because [Raley] is a lesbian."

50.     He also announced to everyone in the room, including dispatcher Lindsay Meyers, Trooper First Class Phillip Spicer, and a currently unknown supervisor, that Bennett had seen a picture of Raley "making out" with a woman.

51.     Bennett further alleged Raley had deleted him from Facebook because Raley was embarrassed about her private life

52.     After learning of Bennett's comments, Raley approached Bennett in the parking lot of the Cumberland Barrack and asked Bennett about the incident, arguing that her private life was her own business and if she wanted to discuss it with any of her colleagues, she would.

53.     Raley ended the conversation after Bennett accused her of being afraid to admit she was a homosexual.

**Bell Targets Raley By Finding Fault in her Work when Other Supervisors Do Not**

54.     Through the summer of 2014, Raley continued to do well in her job, and in August 2014, Lieutenant Homer Martz held a meeting with Bell, Sergeant Mitch Stailey, and Raley to praise Raley's performance.

55.     While Bell was on paternity leave for the months of September and October 2014, and returned from leave on October 27, 2014, Raley and the rest of Work Group 2 reported to Sergeant Mitch Stailey.

56.     While reporting to Stailey, Raley received positive feedback on her work from Stailey and the barrack commanders.

57.     On October 27, 2014, the day Bell returned from leave, he approached Raley about her performance while he was on leave, alleging that:

    a.   Raley was "timid" while handling calls.

    b.   An off duty trooper may have seen Raley texting while driving.

    c.   On one occasion, Raley forgot her handcuff key in a different uniform and could not un-cuff a cuffed prisoner, so she requested that one of colleagues assist her. Raley generally asked co-workers too many questions and for too much help.

58.     Bell instructed Raley to direct all future questions to him and advised her that Raley's colleagues will report all of her mistakes to him and would not be allowed to assist her.

59.     Bell informed Raley's colleagues that he was singling Raley out and instructed them to report to him any mistakes they observed Raley making without attempting to help her

60.     Bell also told Raley that he had listed in her job observation folder that Raley was seen using her cell phone at Maryland State Police events and that this reflected poorly on Raley. Prior to this, Bell had never said anything to Raley about her cell phone use

61.     Bell also cautioned Raley against using her cell phone while working and against posting work related photos on social media, despite Raley explaining that she had not done so.

62.     Bell then issued Raley a negative personal counseling form (Form 165) based on a September 2014 incident where Raley posted a status on Facebook that said, "Oh great, I just stopped Amanda Mangan." Mangan is a local radio personality. Raley had already deleted the status, as she did acknowledge that it was inappropriate.

63.     Bell had previously (1) posted to Facebook and other social media while on shift, (2) used his phone while driving his Maryland State Police patrol vehicle, and (3) even allowed other troopers to comment in disparaging ways about the Maryland State Police and its equipment.

64.     Bell responded to Raley's attempt to explain herself by acting against protocol and placing information in Raley's personnel file that he did not personally witness. Further, the allegations against Raley were hearsay and untrue.

**Raley Reports Bell and Bennett**

65.     On or about October 31, 2014, Raley emailed the Lieutenant of the barrack, Homer Martz, and asked to meet with Martz to discuss the discrimination and harassment Raley was experiencing from Bell and Bennett.

66.     On or about November 3, 2014, Raley met with Martz and Raley's mother, Michelle Raley, at the library in LaVale, Maryland.

67.     At this meeting, Raley told Martz about Bennett's behavior toward her, including Bennett's comments, Bennett's invasion of Raley's personal life, his comments about Raley's sexuality, and his tendency to share naked pictures with others in the barrack while working.

68.     Martz did not take the allegations and complaint seriously, advising Raley and her mother that Bennett was born a "male" so he was already born with a "disability," referring to him as "retarded."

69.     Raley also complained about Bell's behavior toward Raley--how Bell was singling her out, treating her unfairly, and prohibiting her from asking for assistance from fellow troopers, which could be a safety concern.

70.     Martz appeared to ignore all allegations of Bell's misconduct by changing the subject and shifting the attention to Bennett.

71.     The meeting ended with Martz agreeing to file a harassment claim (Form 51) with the Office of Fair Practices against Bennett on Raley's behalf, although Martz was reluctant to do so and continually asked Raley if she was certain she wanted the form filed.

**Raley Faces Retaliation**

72.     Martz filed the Form 51 with the Office of Fair Practices on or about November 3, 2014.

73.     Stacey Gappert, who works for the Office of Fair Practices, requested to interview Bell.

74.     Martz made excuses for why Gappert could not interview him, so Gappert instructed Martz to interview Bell, which Martz never complied with.

75.     Gappert reported Martz's reluctance to interview Bell to Raley.

76.    In or around November 2014, envelopes from the Office of Fair Practices were placed on the top of Bennett's and Raley's mail boxes in the duty officer's room, alerting the troopers that a complaint had been filed involving Bennett and Raley.

77.    On or about November 12, 2014, Raley was switched to Work Group 3, effective immediately, so as to avoid her working any shifts at the same time as Bennett and/or Bell. She was told to report to Corporal Kevin Zuzak and Sergeant William Elliott.

78.    Initially, Raley requested, and was told, that she would be assigned to Work Group 4, but Bennett sabotaged her request by alleging that one of the Work Group 4 troopers was stalking Raley.

79.    Further, Bell continued to attempt to supervise and sanction Raley despite no longer being her direct overseer.

80.    On or about November 20, 2014, Bell informed Raley that he would conduct her vehicle and personnel inspection.

81.    Despite Raley's statements that she reported to a different supervisor and that her car had been out of service and in repairs for one week due to an engine malfunction, Bell continued with the car inspection and further inspected Raley's medical bag, which was very uncommon.

82.    Bell further lacked authority to inspect Raley's car because, according to the Maryland State Police manual, vehicles that are out of service are not to be inspected.

83.    Although the trunk of Raley's car was clean, as was the inside of the car, Bell told Raley that the vehicle was in horrible condition and instructed Raley to clean it before leaving for the day.

84.     During the same incident, Bell further requested that Raley sign her job observation report for the month, which Raley refused to do as it contained false information.

85.     The next day, on or about November 20, 2014, Raley received a disciplinary write up (Form 164) from Bell that stated Raley's vehicle was a "mess."

86.     Raley reported the incident from the previous night and the November 20, 2014, disciplinary note to Gappert in the Office of Fair Practices, leading to Gappert including Bell in the Office of Fair Practice's investigation.

### The Office of Fair Practices Investigates

87.     As part of her investigation, Gappert spoke with Raley, Sarver, Bennett, Bell, and a few currently unknown troopers.

88.     Throughout November and December 2014, everyone in the Cumberland Barrack knew about Raley's complaint and employees were discussing the complaint openly on social media and on CAPWIN, often making Raley the subject of their jokes.

89.     In December 2014, according to Gappert, Martz was instructed to send an email to everyone in the barrack prohibiting them from discussing the Office of Fair Practice investigation.  Martz never complied and the investigation continued to be a topic of conversation.

90.     Throughout the Office of Fair Practice investigation, Martz repeatedly attempted to protect Bennett and Bell and, as such, did not take action to remedy the discrimination and retaliation targeted at Raley.

91.     Further, Bell began singling out Sarver and writing Sarver up for small things, including vehicle cleanliness, to cover the fact that he was previously singling out Raley.

### The Office of Fair Practices Substantiates Raley's Complaint,
### But Raley Still Suffers Retaliation

92.     On May 7, 2015, the Office of Fair Practices issued Raley a letter stating, "It has been determined that there was evidence to support the allegations of discrimination based on sex (gender), sexual orientation and retaliation. Therefore, appropriate corrective action will be taken to address the violation."

93.     The Maryland State Police Internal Affairs Unit then handled the discipline of officers.  Nonetheless, Bennett was not disciplined and Bell merely received a disciplinary write up (Form 164) for allowing troopers to display naked pictures.

94.     The Cumberland Barrack had to go through additional electronic re-training, but it was minimal and insufficient.

95.     Raley continued to face retaliation and continued to be the subject of crude and discriminatory rumors and social media posts circulating among and initiated by Maryland State Police employees—she was labeled as a "whiny baby" and accused of filing the complaint because she was merely "offended," demonstrating that the Defendant's employees view their discriminatory and retaliatory remarks as nothing more than a joke.

96.     Raley continues to be threatened with a transfer in the event that she fails to reach the sixty (60) stop per month requirement.

97.     Although Bell was transferred to the Rockville Barrack in or around January 2016, he continued posting inappropriate and discriminatory comments alluding to Raley on social media.

98.     Corporal Kevin Zuzak gave Raley her six month appraisal in or around July 2015, emphasizing that he did not agree with Bell's negative comments regarding her job performance.

99.     On or about November 29, 2015, Martz reprimanded Raley for her "low production in November," which he claimed was unacceptable.

100.     On May 10, 2016, Martz, at the direction of Captain Fluharty, issued Raley a Form 165 for not making sixty (60) traffic stops per month and threatened her with a transfer in the event she consistently failed to fulfill her monthly traffic stop quota.

101.     Raley had a high number of arrests that month, and was told by Sgt. Cook that, as such, she only needed to reach fifty (50) traffic stops that month.

102.     In July 2016, Raley was on leave for fifteen (15) days, and therefore did not reach the sixty (60) stops per month requirement.

103.     As a result, her patrol car was taken away from her.

104.     Trooper Buskirk had been in the same position the previous month, June 2016, yet his vehicle was not taken away.

105.     Raley had been on leave for eighteen (18) days in March 2016 for medical reasons.

106.     Other than her traffic stops, all of her other statistics were at least equal to, if not higher than, other troopers in the barrack.

107.     No other trooper at the Cumberland Barrack was issued a Form 165 based on a low number of stops.

108.     Further, Trooper Thomas did not meet the sixty (60) stops requirement for ten (10) months of 2016, yet he was not disciplined to the extent that Raley was discipline.

14

**Raley Files an EEOC Complaint**

109.    Raley filed a Charge of Discrimination alleging Discrimination, Retaliation, and Harassment with the Equal Employment Opportunity Commission ("EEOC") and the Maryland Commission on Civil Rights in or around January 2015.

110.    On or about June 11, 2015, the Maryland State Police, through Carolyn Brown, Director of the Office of Fair Practices, filed a response to Raley's Charge of Discrimination with the EEOC, stating that "the allegations [of discrimination, retaliation, and sexual harassment] in the internal complaint were sustained."

111.    Since Raley filed her complaint with the Office of Fair Practices, Martz has named Bennett "Trooper of the Month" on multiple occasions.

112.    Martz has also has named Bell "Supervisor of the Month."

113.    Since Raley filed her complaint with the Office of Fair Practices, she continues to be the target of various discriminatory and malicious Facebook posts and comments.

114.    Since the investigation, Bell has been promoted to Sargent, which is a higher ranking position with higher pay.

115.    On February 26, 2016, EEOC Investigator Janel Griffin, who had been assigned to investigate Raley's complaint on or about September 23, 2015, issued a "Dismissal and Notice of Rights" to Raley.

116.    Maryland State Police continues to retaliate against Raley by subjecting her to heightened scrutiny, disciplining her for actions for which male troopers are not disciplined, and discussing her as if she has a "target on her back."

117.    On May 31, 2016, Martz, Cook, Elliott, and Sargent Jeremy Stonebraker placed Raley on a performance improvement plan for not meeting her traffic stop quota, despite her

arrest numbers being higher than average. As part of the plan, she is required to email her statistics at the end of every shift to Zuzak and Elliott and to document everything she does during her shifts, including every call she makes and the time of the call.

118.    No other trooper in the barrack is required to do this, and Martz and management do not discipline male troopers in the same way they discipline Raley.

119.    On June 3, 2016, Martz falsely claimed that Raley's "traffic production has been failing to meet barrack averages over the past 6 months." Raley had sixty-two (62) stops in February 2016.

120.    The week before July 4, 2016, Cook assigned Raley to a night shift, 9:00 PM to 7:00 AM, in Frederick County.  After having already completed the shift, Raley was informed that this assignment was erroneous and that she owed the Cumberland Barrack a ten (10) hour day as a result.

121.    In July 2016 after filing the original complaint in U.S. District Court, Martz has reprimanded Raley several times for not filling her traffic stop quotas. He took away her work vehicle for failing to meet the quota, although Raley was on leave for fifteen (15) days that month.  Raley was also threatened with a transfer if she failed to get sixty (60) stops again this year.

122.    Before her July 2016 leave, Raley was assigned to the night shift where, to the knowledge of management, traffic stops are more difficult to make than they are during the day shift, as traffic volume is very low except during peak hours from 9:00 PM to 11:00 PM. As a result, Raley's traffic stops were low in number.

123.     The majority of troopers have, at one point or another and often during consecutive months, failed to meet the traffic stop quota, yet their work vehicles are never taken away, nor are they threatened with a transfer.

124.     Raley continues to be retaliated against and placed under scrutiny—Martz and Cook have had numerous meetings with Raley's supervisor asking that she be closely monitored and disciplined.

## COUNT I

### Sex Discrimination in Violation of
### Title VII, 42 U.S.C. § 2000e-2
### Against Defendant Maryland State Police

125.     Plaintiff incorporates the allegations contained in all the foregoing paragraphs as though fully alleged herein.

126.     Defendant is an "employer" as defined in 42 U.S.C. § 2000e.

127.     Raley is an "employee" as defined in 42 U.S.C. § 2000e.

128.     Raley is a female.

129.     Maryland State Police, through its managers, unlawfully subjected Raley to and tolerated discrimination against Raley, because of her sex.

130.     Raley is the only female trooper assigned to the Cumberland Barrack.

131.     Maryland State Police, through its managers, repeatedly discriminated against Raley because of her sex by assigning Raley more work than her male counterparts, writing Raley up for minor infractions that Raley's male counterparts were not written up for, "target[ing]" Raley, sanctioning Raley more rigorously than her male colleagues, and subjecting Raley to higher scrutiny and oversight than her male counterparts were subjected to.

17

132.    Defendant's actions give rise to a reasonable inference of unlawful discrimination based on sex because other similarly situated employees who are not female are not subject to the additional work, heightening scrutiny, disciplinary write ups, or "targeting" that Raley is subject to.

133.    Defendant has no legitimate business reason for the actions taken against Raley as she has had positive reviews, has higher statistics than her male counterparts, and has demonstrated that Bell's negative comments regarding her work are false.

134.    Raley has sustained substantial injury as a result of Defendant's illegal discrimination.

## COUNT II

**Retaliation in Violation of
Title VII, 42 U.S.C. § 2000e-3
Against Defendant Maryland State Police**

135.    Plaintiff incorporates the allegations contained in all the foregoing paragraphs as though fully alleged herein.

136.    Defendant is an "employer" as defined in 42 U.S.C. § 2000e.

137.    Raley is an "employee" as defined in 42 U.S.C. § 2000e.

138.    Raley first engaged in protected activity when she met with Lieutenant Martz on November 3, 2014 and informed him of Bennett's and Bell's discriminatory behavior towards her.

139.    On November 3, 2014, Raley engaged in protected activity when Martz filed a harassment claim (Form 51) with the Office of Fair Practices against Bennett on Raley's behalf.

140.    Raley engaged in protected activity when she filed her Charge of Discrimination with the EEOC on or about January 14, 2015.

18

141.    Raley engaged in protected activity when she filed her complaint in the U.S. District Court for the District of Maryland on or about May 26, 2016.

142.    Defendant retaliated against Raley on multiple occasions following these protective actions, mainly through unnecessary and inappropriate sanctions and threats of transfer; malicious and offensive rumors and social media comments instigated by Defendant's employees; false claims of inadequate performance initiated by Defendant's employees; and excessive and inappropriate measures of work supervision.

143.    Defendant continues to retaliate against Raley by allowing management to perpetuate rumors about Raley and by targeting, watching, and subjecting Raley to higher scrutiny.

144.    Defendant's actions give rise to a reasonable inference of unlawful retaliation due to temporal proximity and because other similarly situated employees who have not engaged in protected conduct are not subject to the additional work, heightening scrutiny, disciplinary write ups, or "targeting" that Raley is subject to.

145.    Defendant has no legitimate business reason for the actions taken against Raley as she has had positive reviews, has higher statistics than her counterparts, and has demonstrated that Bell's negative comments regarding her work are false.

146.    Raley has sustained substantial injury as a result of Defendant's illegal retaliation.

## COUNT III

**Hostile Work Environment Because of Sex in Violation of
Title VII, 42 U.S.C. § 2000e-2
Against Defendant Maryland State Police**

147.    Plaintiff incorporates the allegations contained in all the foregoing paragraphs as though fully alleged herein.

148.    Defendant is an "employer" as defined in 42 U.S.C. § 2000e.

149.    Raley is an "employee" as defined in 42 U.S.C. § 2000e.

150.    Raley is a female.

151.    Raley is the only female trooper assigned to the Cumberland Barrack.

152.    Maryland State Police, through its managers, created a hostile work environment toward Raley because of her sex by assigning Raley more work than her male counterparts, writing Raley up for minor infractions that Raley's male counterparts were not written up for, "target[ing]" Raley, subjecting Raley to higher scrutiny and oversight than her male counterparts were subjected to, and allowing its employees to perpetuate rumors and discriminatory comments about Raley both on social media and also on Defendant's premises.

153.    Defendant created a hostile work environment against Raley because of her sex by allowing management to perpetuate rumors about Raley and by targeting, watching, and subjecting Raley to higher scrutiny.

154.    Defendant's actions give rise to a reasonable inference of a hostile work environment based on sex because other similarly situated employees who are not female are not subject to the additional work, heightening scrutiny, disciplinary write ups, or "targeting" that Raley is subject to.

155.    Defendant has no legitimate business reason for the actions taken against Raley as she has had positive reviews, has higher statistics than her male counterparts, and has demonstrated that Bell's negative comments regarding her work are false.

156.    Defendant has knowledge of the above outlined facts and has taken no steps to stop the hostile work environment.

157.    Defendant's actions toward Raley are severe and pervasive.

20

158.    Raley has sustained substantial injury as a result of Defendant's hostile work environment.

## COUNT IV

**Hostile Work Environment Because of Protected Conduct in Violation of Title VII, 42 U.S.C. § 2000e-3 Against Defendant Maryland State Police**

159.    Plaintiff incorporates the allegations contained in all the foregoing paragraphs as though fully alleged herein.

160.    Defendant is an "employer" as defined in 42 U.S.C. § 2000e.

161.    Raley is an "employee" as defined in 42 U.S.C. § 2000e.

162.    Raley first engaged in protected activity when she met with Lieutenant Martz on November 3, 2014, and informed him of Bennett and Bell's behavior toward her.

163.    On November 3, 2014, Raley engaged in protected activity when Martz filed a harassment claim (Form 51) with the Office of Fair Practices against Bennett on Raley's behalf.

164.    Raley engaged in protected activity when she filed her Charge of Discrimination with the EEOC on or about January 14, 2015.

165.    Raley engaged in protected activity when she filed her complaint in the U.S. District Court for the District of Maryland on or about May 26, 2016.

166.    Defendant created a hostile work environment against Raley because of her protected conduct on multiple occasions, mainly through unnecessary and inappropriate sanctions and threats of transfer; malicious and offensive rumors and social media comments instigated by Defendant's employees; false claims of inadequate performance initiated by Defendant's employees; and excessive and inappropriate measures of work supervision.

167.    Defendant's actions give rise to a reasonable inference of unlawful retaliation due to temporal proximity and because other similarly situated employees who have not engaged in protected conduct are not subject to the additional work, heightening scrutiny, disciplinary write ups, or "targeting" that Raley is subject to.

168.    Defendant has no legitimate business reason for the actions taken against Raley as she has had positive reviews, has higher statistics than her counterparts, and has demonstrated that Bell's negative comments regarding her work are false.

169.    Defendant has knowledge of the above outlined facts and has taken no steps to stop the hostile work environment.

170.    Defendant's actions toward Raley are severe and pervasive.

171.    Raley has sustained substantial injury as a result of Defendant's hostile work environment.

## COUNT V

### Sex Discrimination in Violation of
### FEPA, Md. Code Ann., State Gov't § 20-606
### Against Defendant Maryland State Police

172.    Plaintiff incorporates the allegations contained in all the foregoing paragraphs as though fully alleged herein.

173.    Defendant is an "employer" as defined in Md. Code Ann., State Gov't § 20-601(d)(1).

174.    Raley is an "employee" as defined in Md. Code Ann., State Gov't § 20-601(d)(2).

175.    Raley is a female.

176.    Maryland State Police, through its managers, unlawfully subjected Raley to and tolerated discrimination against Raley, because of her sex.

177.    Raley is the only female trooper assigned to the Cumberland Barrack.

178.    Maryland State Police, through its managers, repeatedly discriminated against Raley because of her sex by assigning Raley more work than her male counterparts, writing Raley up for minor infractions that Raley's male counterparts were not written up for, "target[ing]" Raley, subjecting Raley to higher scrutiny and oversight than her male counterparts were subjected to, and allowing its employees to perpetuate rumors and discussion regarding Raley's sex and sexuality on both social media and on Defendant's premises.

179.    Defendant's actions give rise to a reasonable inference of unlawful discrimination based on sex because other similarly situated employees who are not female are not subject to the additional work, heightening scrutiny, disciplinary write ups, or "targeting" that Raley is subject to.

180.    Defendant has no legitimate business reason for the actions taken against Raley as she has had positive reviews, has higher statistics than her male counterparts, and has demonstrated that Bell's negative comments regarding her work are false.

181.    Raley has sustained substantial injury as a result of Defendant's illegal discrimination.

## COUNT VI

### Sexual Orientation Discrimination in Violation of
### FEPA, Md. Code Ann., State Gov't § 20-606
### Against Defendant Maryland State Police

182.    Plaintiff incorporates the allegations contained in all the foregoing paragraphs as though fully alleged herein.

183.    Defendant is an "employer" as defined in Md. Code Ann., State Gov't § 20-601(d)(1).

23

184.    Raley is an "employee" as defined in Md. Code Ann., State Gov't § 20-601(d)(2).

185.    Raley is a homosexual.

186.    Raley is the only homosexual or perceived homosexual trooper assigned to the Cumberland Barrack.

187.    Raley's colleagues and supervisors know or perceive Raley to be a homosexual.

188.    Maryland State Police, through its managers, unlawfully subjected Raley to and tolerated discrimination against Raley, because of her sexual orientation.

189.    Maryland State Police, through its managers, repeatedly discriminated against Raley because of her sexual orientation by assigning Raley more work than her heterosexual counterparts, writing Raley up for minor infractions that Raley's heterosexual counterparts were not written up for, "target[ing]" Raley, subjecting Raley to higher scrutiny and oversight than her heterosexual counterparts were subjected to, and allowing its employees to perpetuate rumors and discriminatory discussions about Raley's homosexuality, both on Defendant's premises and on social media.

190.    Defendant's actions give rise to a reasonable inference of unlawful discrimination based on sexual orientation because other similarly situated employees who are heterosexual are not subject to the additional work, heightening scrutiny, disciplinary write ups, or "targeting" that Raley is subject to.

191.    Defendant has no legitimate business reason for the actions taken against Raley as she has had positive reviews, has higher statistics than her heterosexual counterparts, and has demonstrated that Bell's negative comments regarding her work are false.

192.    Raley has sustained substantial injury as a result of Defendant's illegal discrimination.

## COUNT VII

### Retaliation in Violation of
### FEPA, Md. Code Ann., State Gov't § 20-606
### Against Defendant Maryland State Police

193.    Plaintiff incorporates the allegations contained in all the foregoing paragraphs as though fully alleged herein.

194.    Defendant is an "employer" as defined in Md. Code Ann., State Gov't § 20-601(d)(1).

195.    Raley is an "employee" as defined in Md. Code Ann., State Gov't § 20-601(d)(2).

196.    Raley first engaged in protected activity when she met with Lieutenant Martz on November 3, 2014, and informed Martz of Bennett and Bell's discriminatory behavior towards her.

197.    On November 3, 2014, Raley engaged in protected activity when Martz filed a harassment claim (Form 51) with the Office of Fair Practices against Bennett on Raley's behalf.

198.    Raley engaged in protected activity when she filed her Charge of Discrimination with the EEOC on or about January 14, 2015.

199.    Raley engaged in protected activity when she filed her complaint in the U.S. District Court for the District of Maryland on or about May 26, 2016.

200.    Defendant retaliated against Raley on multiple occasions following these protective actions, mainly through unnecessary and inappropriate sanctions and threats of transfer; malicious and offensive rumors and social media comments instigated by Defendant's employees; false claims of inadequate performance initiated by Defendant's employees; and excessive and inappropriate measures of work supervision.

201.    Defendant continues to retaliate against Raley by allowing management to perpetuate rumors about Raley and by targeting, watching, and subjecting Raley to higher scrutiny.

202.    Defendant's actions give rise to a reasonable inference of unlawful retaliation due to temporal proximity and because other similarly situated employees who have not engaged in protected conduct are not subject to the additional work, heightening scrutiny, disciplinary write ups, or "targeting" that Raley is subject to.

203.    Defendant has no legitimate business reason for the actions taken against Raley as she has had positive reviews, has higher statistics than her counterparts, and has demonstrated that Bell's negative comments regarding her work are false.

204.    Raley has sustained substantial injury as a result of Defendant's illegal retaliation.

## COUNT VIII

**Hostile Work Environment Based on Sex in Violation of
FEPA, Md. Code Ann., State Gov't § 20-606
Against Defendant Maryland State Police**

205.    Plaintiff incorporates the allegations contained in all the foregoing paragraphs as though fully alleged herein.

206.    Defendant is an "employer" as defined in Md. Code Ann., State Gov't § 20-601(d)(1).

207.    Raley is an "employee" as defined in Md. Code Ann., State Gov't § 20-601(d)(2).

208.    Raley is a female.

209.    Raley is the only female trooper assigned to the Cumberland Barrack.

210.    Maryland State Police, through its managers, created a hostile work environment toward Raley because of her sex by assigning Raley more work than her male counterparts,

writing Raley up for minor infractions that Raley's male counterparts were not written up for, "target[ing]" Raley, subjecting Raley to higher scrutiny and oversight than her male counterparts were subjected to, and allowing its employees to perpetuate rumors and instigate discussions related to Raley's sex, both on Defendant's premises and on social media.

211.     Defendant's actions give rise to a reasonable inference of a hostile work environment based on sex because other similarly situated employees who are not female are not subject to the additional work, heightening scrutiny, disciplinary write ups, or "targeting" that Raley is subject to.

212.     Defendant has no legitimate business reason for the actions taken against Raley as she has had positive reviews, has higher statistics than her male counterparts, and has demonstrated that Bell's negative comments regarding her work are false.

213.     Defendant has knowledge of the above outlined facts and has taken no steps to stop the hostile work environment.

214.     Defendant's actions toward Raley are severe and pervasive.

215.     Raley has sustained substantial injury as a result of Defendant's hostile work environment.

## COUNT IX

**Hostile Work Environment Based on Sexual Orientation in Violation of
FEPA, Md. Code Ann., State Gov't § 20-606
Against Defendant Maryland State Police**

216.     Plaintiff incorporates the allegations contained in all the foregoing paragraphs as though fully alleged herein.

217.     Defendant is an "employer" as defined in Md. Code Ann., State Gov't § 20-601(d)(1).

218.    Raley is an "employee" as defined in Md. Code Ann., State Gov't § 20-601(d)(2).

219.    Raley is a homosexual.

220.    Raley is the only homosexual, or perceived homosexual, trooper assigned to the Cumberland Barrack.

221.    Raley's colleagues and supervisors know or perceive Raley to be a homosexual.

222.    Maryland State Police, through its managers, created a hostile work environment toward Raley because of her sexual orientation by assigning Raley more work than her heterosexual counterparts, writing Raley up for minor infractions that Raley's heterosexual counterparts were not written up for, "target[ing]" Raley, subjecting Raley to higher scrutiny and oversight than her heterosexual counterparts were subjected to, allowing its employees to instigate rumors and discussion about Raley's sexual orientation, both on Defendant's premises and on social media, and generally subjecting Raley to higher scrutiny.

223.    Defendant's actions give rise to a reasonable inference of a hostile work environment based on sexual orientation because other similarly situated employees who are heterosexual are not subject to the additional work, heightening scrutiny, disciplinary write ups, or "targeting" that Raley is subject to.

224.    Defendant has no legitimate business reason for the actions taken against Raley as she has had positive reviews, has higher statistics than her heterosexual counterparts, and has demonstrated that Bell's negative comments regarding her work are false.

225.    Defendant has knowledge of the above outlined facts and has taken no steps to stop the hostile work environment.

226.    Defendant's actions toward Raley are severe and pervasive.

227.     Raley has sustained substantial injury as a result of Defendant's hostile work environment.

## COUNT X

**Hostile Work Environment Because of Protected Conduct in Violation of
FEPA, Md. Code Ann., State Gov't § 20-606
Against Defendant Maryland State Police**

228.     Plaintiff incorporates the allegations contained in all the foregoing paragraphs as though fully alleged herein.

229.     Defendant is an "employer" as defined in Md. Code Ann., State Gov't § 20-601(d)(1).

230.     Raley is an "employee" as defined in Md. Code Ann., State Gov't § 20-601(d)(2).

231.     Raley first engaged in protected activity when she met with Lieutenant Martz on November 3, 2014, and informed him of Bennett's and Bell's discriminatory behavior towards her.

232.     On November 3, 2014, Raley engaged in protected activity when Martz filed a harassment claim (Form 51) with the Office of Fair Practices against Bennett on Raley's behalf.

233.     Raley engaged in protected activity when she filed her Charge of Discrimination with the EEOC on or about January 14, 2015.

234.     Raley engaged in protected activity when she filed her complaint in the U.S. District Court for the District of Maryland on or about May 26, 2016.

235.     Defendant created a hostile work environment against Raley because of her protected conduct on multiple occasions, mainly through unnecessary and inappropriate sanctions and threats of transfer; malicious and offensive rumors and social media comments

instigated by Defendant's employees; false claims of inadequate performance initiated by Defendant's employees; and excessive and inappropriate measures of work supervision.

236.     Defendant continues to create a hostile work environment against Raley because of her protected conduct by allowing management to perpetuate rumors about Raley and by targeting, watching, and subjecting Raley to higher scrutiny.

237.     Defendant's actions give rise to a reasonable inference of unlawful retaliation due to temporal proximity and because other similarly situated employees who have not engaged in protected conduct are not subject to the additional work, heightening scrutiny, disciplinary write ups, or "targeting" that Raley is subject to.

238.     Defendant has no legitimate business reason for the actions taken against Raley as she has had positive reviews, has higher statistics than her counterparts, and has demonstrated that Bell's negative comments regarding her work are false.

239.     Defendant has knowledge of the above outlined facts and has taken no steps to stop the hostile work environment.

240.     Defendant's actions toward Raley are severe and pervasive.

241.     Raley has sustained substantial injury as a result of Defendant's hostile work environment.

## **PRAYER FOR RELIEF**

Plaintiff Raley respectfully requests the Court enter judgment in his favor and award him the following relief:

    a.   Compensatory damages;

    b.   Punitive damages;

    c.   Reasonable attorney's fees and costs; and

d.   Any other relief this Court deems just and equitable.

## REQUEST FOR JURY TRIAL

Plaintiff Raley requests a trial by jury for any and all issues proper to be so tried.


Dated: December 27, 2016


Respectfully Submitted,

\_\_/s/ Michael Vogelsang\_\_
R. Scott Oswald (No. 25391)
Michael L. Vogelsang, Jr.
The Employment Law Group, P.C.
888 17th Street, NW, Suite 900
Washington, D.C. 20006
(202) 261-2806
(202) 261-2835 (facsimile)
soswald@employmentlawgroup.com
mvogelsang@employmentlawgroup.com
*Counsel for Plaintiff*

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 27th day of December, 2016, a true and correct copy of

the foregoing *First Amended Complaint* was served via CM/ECF on:

**Mira A. Feldstein, Esq.**
Assistant Attorney General
Maryland State Police
1201 Reisterstown Road
Pikesville, Maryland 21208
(410) 653-4452 (telephone)
(410) 653-4270 (facsimile)
mira.feldstein@maryland.gov
*Counsel for Defendant*


Respectfully submitted,

/s/ Michael Vogelsang
Michael Vogelsang